# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| AMERICA SERVICE GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 3:10-cv-0616 |
| | ) Judge Trauger |
| v. | ) |
| | ) |
| ZURICH AMERICAN INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the court is the plaintiff's Motion for Leave to Amend Complaint (Docket No. 38), to which the defendant has responded (Docket No. 39), the plaintiff has filed a reply (Docket No. 46), and the defendant has filed a sur-reply (Docket No. 44). For the reasons discussed herein, the plaintiff's motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

This case concerns an insurance policy issued by the defendant, Zurich American Insurance Company ("Zurich"), to the plaintiff, America Service Group, Inc. ("ASG"). ASG is a Delaware corporation with its principal place of business in Brentwood, Tennessee, and Zurich is a New York corporation with its principal place of business in Schaumburg, Illinois.

---

[1] On November 2, 2010, the court ruled on the defendant's Motion to Dismiss several claims asserted in the plaintiff's First Amended Complaint. (Docket No. 27.) In so doing, the court provided a recounting of the facts as stated in that Complaint. (*Id.*) As the proposed Second Amended Complaint seeks to add a claim but not amend any of the underlying facts (Docket No. 38 Ex. 1), the court provides essentially the same factual recounting as in the November 2, 2010 Memorandum.

1

In 2004, ASG was in the market for directors' and officers' liability insurance coverage for the directors and officers of the company. ASG sought both a primary policy and an "excess" policy, which would provide insurance coverage for liability above the cap set by the primary policy. Additionally, ASG "sought full coverage without a prior acts endorsement." (Docket No. 38 Ex. 1 at 4.) If the excess policy had a prior acts endorsement, it would only cover a claim that arose out of events that occurred after the policy period commenced. A policy without a prior acts endorsement would not have this temporal limitation.

In November 2004, Zurich issued ASG a proposal for excess coverage that, according to ASG, "omitted any reference to a prior acts endorsement" and quoted a premium of $86,250. (*Id.*) ASG claims to have accepted this offer for excess coverage.

On November 22, 2004, Zurich issued an insurance "binder" related to the Excess Policy, which, while quoting the same premium, indicated that the Policy would be limited by a prior acts endorsement. According to ASG, the binder indicated, however, that "Zurich would remove the prior acts endorsement upon receipt of a warranty letter from ASG within ten business days" and that "Zurich could remove the prior acts endorsement upon receipt of the warranty letter at any time, including after expiration of the ten-day period." (*Id.* at 5.) The warranty letter, in essence, was to represent that, as of the effective date of the Excess Policy, ASG had no knowledge of any conduct that might give rise to a claim under the Excess Policy.

ASG paid for, and Zurich issued, the Excess Policy (with the prior acts endorsement pending the warranty letter), effective November 21, 2004. The Excess Policy provided $5 million in coverage after exhaustion of the $10 million in coverage provided by the primary

2

policy, which was issued by a different entity. ASG maintains that the ten-day window for submission of the warranty letter was not a "material" term in the Excess Policy. (*Id.* at 3.) That is, it was "customary" for Zurich to accept warranty letters outside of the ten-day window, and, here, "Zurich's representatives assured ASG and/or the brokers that Zurich would remove the prior acts endorsement upon receipt of a warranty letter after the ten-day period passed." (*Id.* at 5.)

Indeed, ASG maintains that, throughout their relationship, Zurich "continued to lead ASG and/or the brokers to believe that the prior acts endorsement would be removed after receipt of the warranty letter." (*Id.* at 6.) In November 2005, Zurich and ASG renewed the Excess Policy for another year and, during the negotiations regarding the renewal, "Zurich again indicated its willingness to remove [] the prior acts endorsement from the Excess Policy when it received a warranty letter from ASG dated as of November 21, 2004, the effective date of the Excess Policy," and Zurich "did not condition" its removal of the endorsement on receiving the warranty letter by a specific date. (*Id.*)

On April 7, 2006, ASG submitted a warranty letter to Zurich stating that, on November 21, 2004, it had "no knowledge or information of any act, error or omission which might give rise to a claim, suit or action under the Excess Policy." (*Id.*) The Complaint also states that, "between April 2006 and June 2006, four putative federal securities class action lawsuits were filed [in this district] against ASG, a subsidiary of ASG, and certain directors and officers." (*Id.*) These lawsuits alleged that ASG's stock price had been artificially inflated beginning on September 2, 2003.

On April 11 and 12, 2006, ASG formally notified Zurich of the first and second lawsuits

3

and sought defense and indemnity. On April 13, 2006, Zurich notified ASG's insurance broker that it was "rejecting ASG's warranty letter 'due to the time period that has passed.'" (*Id.* at 7.) On August 16, 2006, Zurich issued its "preliminary views on coverage" letter, which stated that the prior acts endorsement barred coverage under the Excess Policy. (*Id.*) ASG claims that repeated demands for Zurich to pay ASG's defense and indemnity costs in excess of the primary policy limits have been unsuccessful.

Following settlements in the securities litigation in September 2009 and February 2010, ASG's losses related to that litigation have exceeded the limits of the primary policy. Zurich continues to refuse to cover ASG's "excess" losses.

On June 23, 2010, ASG filed this lawsuit, and the First Amended Complaint, which was timely filed on August 25, 2010, asserted nine claims. (Docket No. 20.) On September 20, 2010, the defendant moved to dismiss five of those claims. (Docket No. 24.) In its November 2, 2010 ruling, the court granted the motion to dismiss as to the plaintiff's promissory fraud claim and otherwise denied the motion. (Docket No. 27 at 14.) In dismissing the promissory fraud claim, the court stated:

> As ASG properly recognizes, the "forward looking" nature of the alleged fraud dictates that ASG's claim under Tennessee law is one for promissory fraud. *See Styles v. Blackwood,* 2008 WL 5396804, *7 (Tenn. Ct. App. Dec. 29, 2008). To establish a claim for promissory fraud, the party asserting the claim must show that a material promise of future conduct was made with the intent not to perform, that reliance on the promise was reasonable, and that the party asserting promissory fraud was injured thereby. *Id.* Given that "not every broken promise starts with a lie," intent is "the most difficult element" of the claim to establish. *Id.*
>
> Moreover, a higher pleading standard applies to claims of fraud, including promissory fraud. *Schmidt v. Martin*, 2005 WL 2100645, *2 (W.D. Tenn. Aug. 19, 2005). When alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires allegations about "the time, place, and content of the alleged misrepresentation . . . ; the fraudulent intent of the defendants; and the

> injury resulting from the fraud." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (citation omitted). Rule 9(b), however, "should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *Id.* at 503. The key consideration is whether the complaint gives the defendant "fair notice" of the fraud claim and enables the defendant to prepare a responsive pleading. *Id.* at 504**. . . .**
>
> The Amended Complaint fails to provide any substantive detail regarding the time, place, and content of the alleged misrepresentations or the fraudulent intent of the defendants. Indeed, the Amended Complaint indicates that, at the time that the alleged misrepresentations were made, Zurich *did not* have an intent to defraud, given that the Amended Complaint maintains that Zurich commonly accepted warranty letters outside the ten-day window noted in the insurance binder. (Docket No. 20 at 5.) There is every indication from the Amended Complaint that, had ASG not been sued at the same time that it tried to submit the warranty letter, Zurich would have accepted the letter and removed the prior acts endorsement. In light of this, the promissory fraud claim (count VI) will be dismissed.
>
> (*Id.* at 7-9.)

On April 14, 2011, the plaintiff filed the pending motion to add a claim under the Tennessee Consumer Protection Act (TCPA). (Docket No. 38.) The plaintiff does not propose to add any factual content to the Complaint, rather suggesting that the factual content alleged is sufficient to support the claim that the plaintiff suffered "ascertainable losses" when the defendant violated the TCPA by employing "unfair and/or deceptive practices," that is, denying the claim for excess policy coverage after the policy was paid for and "refusing to accept the warranty letter" after previously treating the letter as a "pro forma, nonmaterial requirement." (Docket No. 38 Ex. 1 at 15.)

## ANALYSIS

**I.     Motion for Leave to Amend – Legal Standard**

In general, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P 15(a)(2). In ruling on a motion for leave to amend, the court may consider several

5

factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. . . . Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). "A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams County Regional Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005)(internal quotation omitted). Despite these rationales for denying leave to amend, in general, the mandate that leave is to be "freely given . . . is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## II. The Plaintiff's Motion

The central issue of dispute between the parties here is whether, in light of the court's dismissal of the promissory fraud claim due to the plaintiff's failure to meet the "heightened" pleading standard, the proposed TCPA claim, which is premised on the same facts, would fail as well.[2] (*See* Docket Nos. 39, 44, and 46.)

The defendant argues that the motion for leave to amend must be denied as futile because

---

[2]The plaintiff's initial motion maintained that the amendment issue was "straightforward" and indicated that the only potentially complicating issue was the TCPA's one-year statute of limitations, which, based upon the court's previous ruling, started running in September 2009. (Docket No. 38 at 1-2.) The plaintiff argued that its failure to assert this claim prior to April 2011 was not problematic because the TCPA claim "arose out of the conduct, transaction or occurrence set out in the original pleading," and, therefore, for statute of limitations purposes, the claim "relates back" to the date of the initial filing in June 2010. (*Id.* at 2 quoting *Anderson v. Young Touchstone Co.*, 735 F. Supp.2d 831, 835 (W.D. Tenn. 2010) and citing Fed. R. Civ. P 15(c)(1)(B)). The defendant does not raise the statute of limitations issue in either its response or sur-reply, and, at this stage, there appears to be no dispute that the TCPA claim is timely.

"claims under the TCPA are held to the same heightened pleading standard as claims for fraud under Federal Rule of Civil Procedure 9(b)," and, as noted above, when pleading fraud, it is the plaintiff's burden to allege the specific time, place, and content of the alleged misrepresentation or deceitful conduct.[3] (Docket No. 39 at 5-6.)  Moreover, the defendant argues, the plaintiff has failed to make "any allegations consistent with an unfair and deceptive business practice" and has failed to state how it was deceived by the alleged misconduct. (*Id*. at 6-7.)  In light of the court's findings that the allegations in the First Amended Complaint were insufficient to state a claim for fraud under the "heightened" standard, the defendant argues, the TCPA claim could not survive a motion to dismiss, and, therefore, the motion for leave to amend must be denied. (*Id*. at 8-9.)

In its reply, the plaintiff argues that "common law fraud claims and TCPA claims are not to be treated as one and the same." (Docket No. 46 at 1.)  That is, a "deceptive" act, under Tennessee law, is different from a "fraudulent" act, and, therefore, "allegations supporting a TCPA claim are not subject to the same analysis as those supporting fraud."[4] (*Id*. at 2.)  The

---

[3]The defendant also adds a series of unpersuasive arguments in footnotes.  The defendant maintains that the plaintiff's motion should be denied simply because the plaintiff's counsel made an apparent error of confusion in the TCPA section of the proposed Second Amended Complaint, occasionally (but not always) referring to the parties by the wrong names. (Docket No. 39 at 4.)  While this certainly looks sloppy and should be corrected upon the filing of the Second Amended Complaint, it is hardly a basis for denying the motion under the liberal Rule 15(a).  The defendant also adds footnotes about the ultimate validity of the factual underpinnings of ASG's claims and about a bill pending in the Tennessee legislature that would, apparently prospectively, limit the application of the TCPA to insurance companies. (Docket No. 39 at 5.)  Neither of these points bear on whether the Complaint should be amended to *allege* a claim that arose in *September 2009*.

[4]The plaintiff suggests that this pleading standard issue was resolved in its favor by *Davis v. McGuigan*, 325 S.W. 3d 149, 162 (Tenn. 2010). (*Id.* at 2-3.)  *Davis* involved a motion for summary judgment and the majority's opinion did not directly address whether there is a "heightened" pleading standard for TCPA claims, although the dissent stated that claims under

plaintiff contends that the facts alleged in the proposed Second Amended Complaint "sufficiently explain Zurich's unfair and deceptive business practice of agreeing to provide – and accepting premiums for – prior acts coverage, customarily accepting warranty letters subsequent to a ten-day window . . . and treating receipt of a warranty letter as a pro forma requirement, then rejecting the warranty letter as 'too late' after a claim is made to avoid coverage." (*Id*. at 5-6.)

The TCPA prohibits the use of "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). Therefore, a plaintiff pleading a TCPA claim is generally considered to have the burden to plead an "unfair or deceptive" act or practice and that such conduct caused an "ascertainable" loss. *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). An "unfair or deceptive" act or practice is a "material representation, practice or omission likely to mislead a reasonable consumer." *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997). This standard applies equally in the insurance context; that is, while insurance company conduct is covered by the TCPA, the plaintiff must ultimately demonstrate deceit or unfair conduct on the part of the insurer. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 926 (Tenn. 1998). Mere denial of a claim is insufficient – deceptive or unfair conduct by the insurer is frequently shown through violations of policy terms, deception about the terms of the policy, or other unfair conduct. *Id*.

The defendant is correct that at least one court, applying the TCPA, indicated that the exact same pleading standard for fraud applies to claims under the TCPA, including the requirement that the plaintiff "specify the time and place of the Defendants' alleged TCPA violations." *McKee Foods Corp. v. Pitney Bowes, Inc*., 2007 WL 896153, *5 (E.D. Tenn. Mar.

---

the TCPA must be pled with the "same specificity applicable to fraud claims." *Davis*, 325 S.W. 3d at 162, 174.

22, 2007). However, based on this court's review of the law, it appears that the prevailing view is that, while the "unfair and deceptive acts" that make up the TCPA claim must be pled with "specificity" and "particularity," there is no explicit requirement that the plaintiff allege the specific "time, place, and content" of misrepresentations or deceptions. *See Metro. Property & Cas. Ins. Co. v. Bell*, 2005 WL 1993446, *5 (6th Cir. Aug. 17, 2005); *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275-76 (Tenn. Ct. App. 1999); *Humphries v. W. End Terrace, Inc.*, 795 S.W. 2d 128, 132 (Tenn. Ct. App. 1990).

Rather, with an eye toward the dual goals of (1) putting the defendant on clear notice of the alleged misconduct and (2) "liberally [] protect[ing] consumers in Tennessee and elsewhere," most courts appear to conduct a careful review of the complaint allegations to determine if the plaintiff has sufficiently alleged an "ascertainable" injury from specific unfair and deceptive conduct. *Morrison v. Allen*, 2009 WL 230220, *10 (Tenn. Ct. App. Jan. 30, 2009); *Taylor v. Standard Ins. Co.*, 2009 WL 113457, *5 (W.D. Tenn. Jan. 13, 2009)("[the plaintiff] has failed to allege any specific facts that support her conclusory allegations that [the defendant] employed any unfair or deceptive business practices in evaluating her [insurance] claim. She does not allege that [the defendant] violated the terms of the policy, deceived her about the terms of the policy, or acted unfairly in its initial determination with respect to her claim. . . . As the allegations in the complaint are not sufficient to state a violation of the TCPA, [the] motion to dismiss [the plaintiff's] TCPA claim is granted."); *Scraggs v. La Petite Acad.*, 2006 WL 2711689, *4 (E.D. Tenn. Sept. 21, 2006)("[t]here are no facts indicating how the alleged misrepresentation of defendant was deceptive and/or unfair, nor that plaintiffs suffered a loss as a result of it. Accordingly, the Court will dismiss plaintiffs' TCPA claim.").

9

Recognizing that there is a heightened standard for pleading claims under the TCPA but also recognizing that common law promissory fraud and a statutory cause of action under the TCPA are different causes of action with different proof requirements and different remedial goals, the court finds that the proposed Second Amended Complaint does sufficiently state a claim under the TCPA. Providing specific facts about the parties' course of dealing, the plaintiff alleges that, over time, the defendant led the plaintiff to believe that the warranty letter was, as the plaintiff puts it, a "pro forma" requirement that would not ultimately be an impediment to full coverage as long as the letter was eventually provided. (Docket No. 38 Ex. 1 at 15.)

Indeed, the plaintiff specifically alleges that, during the November 2005 re-negotiation, the defendant "did not condition removal of the prior acts endorsement on receipt of the warranty letter within any specified time period." (*Id.* at 6.) The plaintiff alleges that it submitted the warranty letter five months later (when the lawsuits were filed against the plaintiff), and the defendant, seeing that it would likely have to provide coverage if it accepted the letter, decided to suddenly vastly elevate the warranty letter's importance from a *pro forma* requirement to a fundamental prerequisite of coverage with a specific time horizon under which it had to have been provided. Given that the defendant's alleged prior representations could have reasonably given the plaintiff a sense of complacency on this issue, it can be fairly said that the plaintiff has alleged specific and particular facts showing "unfair" or "deceptive" conduct in the insurance context. Moreover, the plaintiff has sufficiently alleged an "ascertainable" loss – the money that the defendant has not provided in response to the claim for excess coverage.

## **CONCLUSION**

As the TCPA claim would survive a motion to dismiss, the plaintiff's Motion for Leave to Amend is not futile, and, therefore, the motion will be granted. The plaintiff shall file a Second Amended Complaint that corrects the typographical errors made in the proposed version submitted to the court.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge